Chowchilla Farms, Inc. v. Commissioner.
Chowchilla Farms, Inc. v. Commissioner
Docket No. 7545.
United States Tax Court
1946 Tax Ct. Memo LEXIS 12; 5 T.C.M. (CCH) 966; T.C.M. (RIA) 46263; December 13, 1946
*12 Milton T. Farmer, Esq., John E. Brown, C.P.A., First Nat. Bank Bldg., Chicago, Ill., and William B. Elson, Jr., Esq., for the petitioner. T. M. Mather, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax in the amount of $53,065.75 and a deficiency in declared value excessprofits tax of $39,650.32, both for the calendar year 1939. The deficiencies were paid subsequent to the filing of the petition. The only issue for decision is whether the cost of certain water rights which the petitioner acquired on April 26, 1917 was $133,700 as determined by the Commissioner or was some larger amount, up to $467,750, as contended by the petitioner. Findings of Fact The petitioner, a California corporation, filed its return for the taxable year with the collector of internal revenue for the first district of Illinois. The petitioner sold water rights to the United States Government on October 2, 1939. The property sold included some water rights which had been acquired by the petitioner on April 26, 1917. The petitioner was incorporated on April 26, 1917. It acquired 41,785 acres of land and *13 appropriative and riparian water rights together with canals and canal structures on that date in consideration of the issuance to the transferor of the entire capital stock of the petitioner, consisting of 14,000 shares of common stock, and the assumption by the petitioner of a mortgage lien against the property with accrued interest in the total amount of $700,000. The appropriative and riparian water rights acquired by the petitioner on April 26, 1917 consisted of: (a) A one-half interest in the appropriative water right of the Chowchilla Canal, entitling the petitioner to the use of one-half of the flow of the San Joaquin River between certain specified limits. (b) The appropriative water right appurtenant to the Blythe Canal system entitling that system to divert waters of the San Joaquin River between certain specified limits. (c) The right of approximately 8,561 acres of lands riparian to the San Joaquin River and to various sloughs and channels thereof, which right entitled those lands to the natural overflow of water from the river at all stages, undiminished except by reasonable use of upper riparian owners and those of other acquired rights. The Commissioner, in *14 determining the deficiencies, made several adjustments. One of those was the addition to income of $347,963.56 as a profit on the sale of water rights to the government of the United States. He held that the net selling price was $816,640.75 and he deducted $468,677.19 as a basis to arrive at a profit of $347,963.56. He held in making that determination that the original cost of (a) in the table shown above was $204,000 and the original cost of the aggregate of (b) and (c) shown above was $133,700. The aggregate cost to the petitioner of (b) and (c) in the table above was $330,000. The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: The only question which the parties have submitted for decision in this case is - what was the original cost to the petitioner of water rights which the parties describe as the Blythe water rights. An accurate description of those rights is set forth in the stipulation and in the findings of fact. The Commissioner determined and now contends that the cost of those rights was $133,700, while the petitioner contends that their cost was $467,750. The properties were acquired by the petitioner on April 26, 1917 by *15 the issuance of its stock and the assumption of a mortgage. All of the stock was issued for all of the assets acquired at that time and no allocation was made of any portion of the stock or the mortgage to the acquisition of any portion of the assets. There is evidence of a sale of approximately one-half of the stock on the day in May, 1917, when the stock was actually issued. There is no evidence of any other sales of the stock at or about the critical date. There is no evidence one way or the other as to possible market conditions regarding the stock in 1917 except for the sale just mentioned. Opinion evidence to show the value of the properties acquired by the petitioner in 1917 has been introduced. The record also contains other relevant evidence. There is considerable conflict in the evidence. The respondent has not made a full exposition of his theory of the case supported by computations. He had a witness express an opinion that the value of the Blythe rights in 1917 was $132,000. He also relies upon the sale of one-half of the petitioner's stock in May, 1917. He has failed to demonstrate how these two theories are consistent and we are unable to conclude that they are. He places *16 great reliance in the theory that the petitioner has failed to sustain the burden of proof in various aspects of the case. We have attempted to give consideration to all of the evidence in the case and to assign to each the weight to which it seems to be entitled. Our best judgment, based upon the consideration of all the evidence in the case, is that the cost of the water rights in question was $330,000. Decision will be entered under Rule 50.